[No. 34899.   *En Banc.*   January 14, 1960.]

JANET GRIFFIN SCUDDER, *Respondent* v. KATHRYN HACKETT SCUDDER, *as Executrix, Appellant.*[1]

[1]Reported in 348 P. (2d) 225.

*Brethorst, Fowler, Bateman, Reed & McClure,* for appellant.

*Bayley, Fite, Westberg & Madden,* for respondent.

DONWORTH, J.—This is an action for the recovery of support-money payments alleged to be due plaintiff, Janet Griffin Scudder, and chargeable against the estate of her deceased divorced husband.

The facts are not in dispute. The plaintiff, a widow with two minor boys, married the decedent, Dr. Sidney T. Scudder, on October 3, 1952. Thereafter, her two children (who were born on January 1, 1945, and October 4, 1947, respectively) were adopted by the decedent. Plaintiff and the decedent were divorced in King county on March 9, 1956. Prior to the divorce, the parties entered into a property settlement agreement, which provides, in part:

"4. That second party shall pay to the first party the sum of $50.00 per month for the support of each of the said minors, Peter Trenholme Scudder and Paul Gynther Scudder, during their minority, and shall make payments into the registry of the Superior Court for King County."

The divorce decree entered thereafter provided, in part, as follows:

"3. The property settlement agreement heretofore entered into by and between the parties be and *is approved in every detail*, . . .

"5. That the plaintiff be and he is ordered and directed to pay to the defendant for the support and maintenance of the two minor children of the parties the sum of $50.00 per month for each child." (Italics ours.)

Prior to his death on March 10, 1957, the decedent paid all support payments. No payments were made after that date.

The plaintiff timely filed a creditor's claim against the decedent's estate, in the sum of twelve thousand dollars, claiming support for her minor sons at the rate of fifty dollars per month for each child during their minority, being all amounts accrued or to accrue subsequent to March 10, 1957, the date of Dr. Scudder's death. The claim was rejected by the executrix and this action was brought upon the rejected claim.

After trial, the judge made his findings and conclusions and entered judgment allowing plaintiff's claim in the amount of fifteen hundred dollars for the fifteen months which had elapsed to the date of trial, and for the further allowance of fifty dollars per month for each child payable to the plaintiff during their minority, provided that the children are still being supported by the plaintiff and they are not emancipated. Defendant appeals.

The error assigned by the appellant involves but the single issue of whether decedent's obligation to pay child support survives his death.

Appellant and respondent both discuss at length our decision in *Stone v. Bayley*, 75 Wash. 184, 134 Pac. 820 (1913), in which the husband's duty of support arose out of a consensual property settlement agreement, which was not mentioned in the divorce decree at all. Consequently, there was no provision whatever in the decree relating to the husband's obligation of child support. In the course of its opinion, this court decided that the trial court had the *power* to charge the husband's estate with the obligation

of child-support payments. The real basis of the *Stone* decision is that this court held that it was the intention of the parties that the obligation of their *contract* should survive the husband's death.

▮ We think that the case at bar is not controlled by the *Stone* case because the decree before us approved the property settlement agreement "in every detail," and therefore the rights and duties of the parties arise by operation of law. Whereas originally the husband's obligation for support payments arose out of the provisions of the property settlement agreement, once these provisions were approved and confirmed by judicial decree, the husband's obligation to make such payments became subject to modification, alteration, and revision by the court. *Heuchan v. Heuchan,* 38 Wn. (2d) 207, 228 P. (2d) 470, 22 A. L. R. (2d) 1410 (1951).

Thus, if Dr. Scudder had lived and his earning power had subsequently become impaired, he would have had the right to apply to the court for a reduction of the support payments on the basis of a change in circumstances. *Shattuck v. Shattuck,* 141 Wash. 600, 251 Pac. 851 (1927). Here, his earning power has not merely been impaired, but, by virtue of his death, *it had absolutely ceased to exist.* No conceivable change in circumstances could be of greater materiality to the persons concerned. Yet, under respondent's contention, the husband's obligation for support payments continues to be measured by the same set of circumstances that existed at the time the divorce decree was entered. Thus, a divorced physician whose professional income is reduced by a lessening of his earning power may obtain equitable relief, but the legatees of a physician whose professional income ceases to exist because of his death must continue to pay the same amounts for child support that were first fixed by the court on the basis of his earnings when the divorce was granted. These two rules seem to us to be highly inconsistent.

▮ Assuming that the trial court has power to require support payments for a minor child to continue after the death of the husband, the immediate question before us

is whether, in this instance, the trial court exercised its power to that extent. Standing alone, a decree ordering the husband to provide support for his minor children operates *in personam* and would not survive his death. *Esteb v. Esteb,* 138 Wash. 174, 244 Pac. 264; 246 Pac. 27, 47 A. L. R. 110 (1926). In this respect, it is no different from an alimony decree.

■ In *Murphy v. Shelton,* 183 Wash. 180, 48 P. (2d) 247 (1935), this court held that before the provisions of an alimony decree could survive the death of the husband,

" . . . the provision for continuance of such payments after death must either be specifically stated in the decree, or else its language must be so clear and unmistakable as to indicate that the court intended that the decree should have that effect. In the absence of specific statement or clear intention, it will be presumed that the payments abate upon the death of either spouse."

■ Construing the instant decree as though the language of the settlement agreement were expressly set out therein, we think that it falls far short of compliance with the above quoted rule. But, even if the problem before us be regarded as strictly one of contract construction without reference to the decree, we are not persuaded that this case falls within the *Stone v. Bayley* rule.

■ In the *Stone* case, *supra,* the court found that it was the father's intent that the support payments as provided in the contract should survive his death, because he had provided in his will for the support of his children by a prior marriage without making any such testamentary provision for the support of the child of his second marriage. The court interpreted this fact to mean that the father had recognized his continuing contractual obligation to provide for the support of the child in question. The two boys involved in the present case were born to the wife during a prior marriage and had been adopted by the second husband (now deceased) after his marriage to their mother. Although this fact would not affect the deceased husband's legal obligation to support the children, it is a factor to be considered in determining the intention of the parties in entering into a contract of child support.

■ Of further significance is the fact that the settlement agreement required Dr. Scudder to maintain a life insurance policy on his life, naming the wife and children as beneficiaries, to secure the payment of $21,326.60 of community indebtedness to third parties which the husband had agreed to discharge. The contract further stated that "This obligation shall not be construed to include the support payments for the minor children." Thus, in our opinion, it was the intention of the parties that these outstanding bills should be paid by the husband irrespective of whether he lived or died. However, by express provision of the settlement agreement, his obligation to keep the insurance in effect did not pertain to the support payments for the minor children. If the parties had intended that the husband was to remain liable for the child-support payments after his death, it would seem only natural that they would have also provided therefor by securing the support payments in the same manner as his obligation to pay the bills was secured. Under these circumstances, it seems clear that the only reason the parties did not secure the obligation for support payments was because they intended it to be personal to the husband and not to continue beyond his death.

■ The decree before us is simply a recitation of the husband's common-law duty to support his children during their minority, and nothing more. Under both the decree and the common law, the duration of the duty is the same, to wit, as long as the child is a minor. The question here is what is the legal effect of the death of the husband during his child's minority?

If the husband had died during the marriage, his common-law duty to support his minor children would have died with him and he could, by appropriate provision in his will, have prevented them from acquiring any interest in his estate. Thus, to hold the husband's estate liable under the facts of this case is equivalent to holding that a child is better off merely because his parents are divorced when his father dies, and, also, that the father, as a result of the divorce, is deprived of the right to make a testamentary disposition of his property as he sees fit.

■ In conclusion, we are convinced that if a judicial decree is to be held to impose upon the father a greater duty of child support than that required by the common law, the decree must specifically state that such obligation is to survive the death of the obligor.

We hold that the *Stone* case is not controlling in the present case for the reasons stated above, and that the judgment of the trial court must be reversed with directions to disallow respondent's claim with respect to child support for any period subsequent to the death of Dr. Scudder.

It is so ordered.

WEAVER, C. J., HILL, ROSELLINI, OTT, and FOSTER, JJ., concur.

HUNTER, J. (dissenting)—I dissent. The single issue in this case is whether the decedent's obligation to pay child support survives his death. The law has been well settled in this state since our pronouncement in the case of *Stone v. Bayley*, 75 Wash. 184, 134 Pac. 820 (1913). I disagree with the holding of the majority that the *Stone* case is not controlling in the instant case and with the reasons stated therefor.

The majority opinion states that the real basis of the *Stone* decision is that this court held it was the intention of the parties that the obligation of their contract should survive the husband's death; and that the property settlement agreement was not mentioned in the decree, in the *Stone* case, whereas in the instant case, it is a part of the decree; that since it is a part of the decree, it is subject to modification and the intention of the parties under the contract does not apply. This analysis by the majority is contrary to our express holding in the *Stone* case. There we said:

"We are convinced that it was the intention of the parties that the obligation of this contract should survive the husband's death during the life and minority of the child. *We are further convinced that, under our statute, a similar provision if contained in the decree of divorce would have been valid and surviving, and that neither such a decree*

*nor such a contract contravenes any principle of public policy.*" (Italics mine.)

In the instant case the provision contained in the decree is identical with the provision for child support contained in the property settlement agreement, since the agreement was adopted by the decree in every detail. The majority's erroneous analysis of the *Stone* case is further demonstrated by the opinion in *Gainsburg v. Garbarsky,* 157 Wash. 537, 289 Pac. 1000 (1930) where this court, citing the *Stone* case, held that support-money payments awarded in a foreign judgment were a proper basis for a claim against the estate of the deceased father, where the divorce decree *provided* for payments to be made for a fixed period of ten years. The *Stone* case was also cited with approval in *Cissna v. Beaton,* 2 Wn. (2d) 491, 98 P. (2d) 651 (1940).

The majority cite *Esteb v. Esteb,* 138 Wash. 174, 244 Pac. 264; 246 Pac. 27 (1926), as authority for holding that a decree, standing alone, ordering the husband to provide support for his minor children operates *in personam* and would not survive his death. This case does not affect the rule of the *Stone* case.

In the *Esteb* case, the father appealed from the modification of a divorce decree requiring him to continue support-money payments for his daughter, then eighteen years of age, until she became age twenty-one. During the pendency of the appeal, the father died. His executrix was substituted as party appellant. This court, in affirming the trial court, decided only whether a divorced father could be compelled to provide funds for the college education of a minor child whose custody had been given to the mother. No issue of the survival of payments after the death of the father could have been raised in the lower court, since the father at that time was living. The issue of survival of the judgment after the death of the father was not raised until, upon petition for rehearing the substituted appellant requested clarification as to whether the opinion also bound the father's estate. Since the father's death occurred subsequent to the original action, the issue of survival of payments could not have been considered by

the trial court and it could not properly be considered on review. Consequently, the court's opinion as to the effect of the decree as a result of the appellant father's death amounts to only an advisory comment to the executrix, and does not even rise to the status of dicta.

The *Esteb* case, therefore, cannot be considered authority for the law regarding the survival of support payments. Moreover, since the *Esteb* case, the rule of the *Stone* case was affirmed in *Gainsburg v. Garbarsky, supra,* was cited with approval in *Cissna v. Beaton, supra,* and is now the established law of this state. The rule of the *Stone* case is therefore controlling on this appeal. The judgment of the trial court should be affirmed.

MALLERY and FINLEY, JJ., concur with HUNTER, J.

March 14, 1960. Petition for rehearing denied.

[1]Reported in 348 P. (2d) 218.