[No. 37258.    En Banc.    October 15, 1964.]

ESTHER B. BIRD, *Respondent,* v. HARRY HENKE, JR., *as Executor, Appellant.**

*Reported in 395 P. (2d) 751.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellant.

*Chadwick, Chadwick & Mills,* for respondent.

HAMILTON, J.—Esther B. and Arthur Franklin Bird were married on October 7, 1908. After raising three sons and a daughter to maturity they were divorced on May 3, 1951, at the respective ages of 64 and 65. Their decree of divorce, entered by default upon the motion of Mrs. Bird, provided:

"It is FURTHER ORDERED, ADJUDGED AND DECREED that the property settlement agreement heretofore entered into by the plaintiff and the defendant be and the same hereby is in all respects confirmed and ratified;

"It is FURTHER by the Court CONSIDERED, ORDERED, ADJUDGED AND DECREED that the plaintiff be and she hereby is awarded alimony *to be paid by the defendant* in the sum of one hundred fifty dollars ($150.00) per month *so long as she shall live, or until her re-marriage.*" (Italics ours.)

Mr. Bird regularly paid the designated alimony until his death on July 6, 1961. Thereafter Mrs. Bird filed a claim with his estate for alimony installments accruing after his death. The executor of Mr. Bird's estate rejected the claim. Mrs. Bird then commenced this action seeking judgment in the sum of $150 per month payable from the estate commencing with the month of August, 1961, and continuing during her lifetime or until her remarriage. By the allegations of her complaint, Mrs. Bird based her claim upon the property settlement agreement and the provisions of the decree of divorce.

The executor answered Mrs. Bird's complaint, admitting the existence of a property settlement agreement, its confirmation by the court, and the provisions of the decree, but denying Mrs. Bird's entitlement to the relief sought.

Both parties moved for summary judgment. The trial court, predicating its action upon an uncontroverted affidavit filed in support of Mrs. Bird's motion, setting forth the decree and a finding of fact reciting the grounds for the divorce, granted Mrs. Bird's motion and entered summary judgment directing continuation of alimony payments from Mr. Bird's estate. The executor appeals from this judgment.

■ In this jurisdiction there is no question that our courts have the necessary power to decree that the obligation to pay alimony shall survive the death of a divorced husband. In discussing this judicial power, and the implementation thereof, we said in *Murphy v. Shelton,* 183 Wash. 180, 48 P. (2d) 247 (1935), pp. 181, 182, 183 and 184:

"Under the rule at common law, the obligation to pay alimony is regarded as a personal one and terminates upon the death of either the husband or the wife. [citing cases]

"This rule has been modified by statute in many states, so that now, generally, the courts have the *power* to provide in their decrees that alimony shall continue after the death of the obligor and be payable out of his estate. There is some diversity of opinion in the cases as to the degree of certainty that must appear in the decree itself relative to the time that the alimony is to continue. . . .

". . .

"In the light of the reasoning furnished us by the many cases upon the subject, and at the same time having due regard for the liberal policy obtaining in this state in such matters, we are of the view (1) that the court has the *power* to prescribe in its decree that alimony shall continue beyond death; but (2) that, if the court exercises such power, *the provision for continuance of such payments after death must either be specifically stated in the decree, or else its language must be so clear and unmistakable as to indicate that the court intended that the decree should have that effect. In the absence of specific statement or clear intention, it will be presumed that the payments abate upon the death of either spouse.*" (Italics ours.)

We reaffirmed this basic position in *Scudder v. Scudder,* 55 Wn. (2d) 454, 348 P. (2d) 225 (1960), and in *DeRiemer v. Old Nat. Bank of Spokane,* 60 Wn. (2d) 686, 374 P. (2d)

973 (1962). And, in further amplification of the clarity required to carry support obligations growing out of divorce decrees beyond the grave, we stated in the *Scudder* case, *supra,* an en banc decision interpreting a child support provision directing payments "during their minority":

" . . . we are convinced that if a judicial decree is to be held to impose upon the father a greater duty of child support than that required by the common law, the decree must specifically state that such obligation is to survive the death of the obligor."

It is apparent, therefore, that, regardless of the attitude adopted by other jurisdictions, it has become the established policy and rule in this jurisdiction that judicially decreed alimony or support payments will abate upon the death of a divorced obligor, absent specific or manifestly clear and unmistakable decretal provision to the contrary.

We consider this rule a salutory one, if for no other reason than that it encourages the considered judgment inherent in clarity and certainty. It tends to exclude misunderstanding and ambiguity in an area of human relations where the emotions of the moment often conflict with afterthoughts, changing circumstances, death, and the intervention of third party interests. Abandonment of the rule would accomplish no practical result. Watering it down by sophisticated construction of questionable decretal language, however magnanimous the spirit, would lead but to confusion.

In the instant case, counsel for Mrs. Bird isolates the phrase "so long as she shall live," as used in the paragraph of the decree quoted above, and in its isolation contends that it supports the trial court's action. We can agree that such phrase, broadly speaking, is susceptible of the construction sought to be attached to it. We cannot agree, however, that standing alone, it constitutes a manifestly "clear and unmistakable" expression of judicial intent that the alimony obligation imposed by the decree was to become a continuing lien against the estate of Mr. Bird in derogation of his testamentary rights. If it is to be accorded such a literal meaning, then justice requires an equally literal

meaning be attached to the preceding phrase, "to be paid by the defendant," which is capable of a reasonable inference that the payments imposed were to be made by the defendant in esse rather than in morte. The decree is, otherwise, utterly devoid of any indication that the divorce court gave consideration to the life expectancy of Mr. Bird, or to the effect of his death upon the alimony obligation.

We hold, therefore, that the phrase "so long as she shall live," unaided by further decretal language clearly expressive of a judicial intent that the alimony obligations coupled thereto shall survive the death of the obligor, does not meet the standard of specificity and clarity required under the *Murphy, Scudder* and *DeRiemer* cases, *supra*. It follows that the decree, standing alone and unaided by surrounding circumstances, does not overcome the presumption that the payments abated upon the death of Mr. Bird.

As heretofore indicated, the interpretation of the provisions of this decree came before the trial court and comes before us via the summary judgment procedure, with the intent of the parties to the divorce proceedings and of the court entering the decree being the vital issue. It is admitted in the pleadings of the parties in the present action, and asserted in the decree of divorce, that Mr. and Mrs. Bird executed a property settlement agreement incidental to their separation and subsequent divorce action. The decree of divorce was entered by default. The trial court, in the instant case, did not have before it either the property settlement agreement, the pleadings in the divorce action, or the complete findings of fact upon which the decree of divorce was based. Neither do we. Absent, therefore, is any knowledge of the nature and extent of Mr. and Mrs. Bird's property, the manner in which it was divided, their respective sources of income, their respective states of health at the time of the decree, or other similar circumstances which would bear upon a continuing need or reliance upon alimony payments beyond the death of Mr.

Bird and the intent of the parties or the trial court with respect thereto.

If, in fact, it was the intention of Mr. and Mrs. Bird, and of the court entering the decree of divorce, that the alimony payments should continue beyond the death of Mr. Bird, it is reasonable to believe that support for that intent could and would be found in the circumstances, documents, and proceedings preliminary to and supportive of the decree.

The trial court's order granting summary judgment is reversed, and the cause remanded for further proceedings. Costs will abide final determination of the action.

OTT, C. J., HILL, DONWORTH, and WEAVER, JJ., concur.

ROSELLINI, J. (dissenting)—In my opinion, the trial court correctly construed the divorce decree which was before it in this proceeding.

Under the rule at common law, the obligation to pay alimony is regarded as a personal one and terminates upon the death of either the husband or the wife. But the legislature may empower the courts to provide for alimony payments that will not abate upon the death of the payor, and the language of our statute (RCW 26.08.110) is broad enough to confer such power upon the courts of this state. *Murphy v. Shelton,* 183 Wash. 180, 48 P. (2d) 247. Cases are annotated in 39 A.L.R. (2d) 1406.

In *Murphy v. Shelton, supra,* we held that, while the court had the power to provide alimony beyond the death of the husband, it had not exercised it, because it

" . . . merely provided in general terms that the husband should pay alimony in monthly installments of fifty dollars, without designating how long such payments should run. . . ."

We said:

"In the light of the reasoning furnished us by the many cases upon the subject, and at the same time having due regard for the liberal policy obtaining in this state in such matters, we are of the view (1) that the court has the *power* to prescribe in its decree that alimony shall continue beyond death; but (2) that, if the court exercises such power, the provision for continuance of such payments after death

must either be specifically stated in the decree, or else its language must be so clear and unmistakable as to indicate that the court intended that the decree should have that effect. In the absence of specific statement or clear intention, it will be presumed that the payments abate upon the death of either spouse."

In the case before us, the divorce decree provided:

"It is Further . . . Ordered, Adjudged and Decreed that the plaintiff be and she hereby is awarded alimony to be paid by the defendant in the sum of one hundred fifty dollars ($150.00) per month so long as she shall live, or until her re-marriage."

Similar language was used in the divorce decree which was construed in *Farrington v. Boston Safe Deposit & Trust Co.,* 280 Mass. 121, 181 N. E. 779. The court there observed that although the decree did not expressly provide that payments should be made out of the husband's estate as a charge thereon, it was a reasonable inference that such payments were to be so made, under a decree in connection with which a bond was given as security for payment, and which provided that the wife was to be paid a designated sum per month "during the term of her life" unless she should remarry. The court said:

" . . . In the case at bar, if the judge intended that payments were to cease with the death of the libellee, it would be assumed that he would not have included in the decree a phrase that the payments were to be made 'during the term of her life,' for it could not be contended that in the absence of such phrase they would continue after the libellant's death, and hence its only function can be to show that the payments are to continue during the libellant's life regardless of the death of the libellee. . . ."

In my opinion, the phrase "so long as she shall live" indicates that the alimony shall continue beyond the death of the husband, if he does not survive the wife, unless there is language or there are circumstances showing that this was not the intended meaning of the words. This case is before us on a summary judgment, and there is nothing in the judgment or in the record which indicates that the parties or the court which entered the decree of divorce intended

that the payments should cease on the death of the husband. In other words, there is nothing before this court to becloud the clear meaning of the words, "so long as she shall live, or until her remarriage."

The majority, however, have changed the decree and made it read: "so long as she shall live (provided that the defendant shall not predecease her) . . ."

It is true that in the case of *Scudder v. Scudder*, 55 Wn. (2d) 454, 348 P. (2d) 225, a majority of this court held that the import of language in a decree that the husband should pay support money for the children "during their minority" was overcome by the other language and facts which indicated that the parties to a property-settlement agreement did not intend that the obligation of the father should extend beyond his death. There are before us in this case no facts which would controvert the clearly expressed intent that the alimony payments should continue so long as the respondent lives.

In the recent case of *DeRiemer v. Old Nat. Bank of Spokane*, 60 Wn. (2d) 686, 374 P. (2d) 973, we again recognized that a divorce decree may provide for alimony to be paid after the death of the payor. In that case, however, the decree did not provide that payments should be made so long as the wife should live. She based her claim that the payments should not abate on the death of her husband upon a contention that they were not alimony but a part of the property settlement. That contention was rejected by this court.

The appellant cites the case of *Desjardins v. Desjardins*, 193 F. Supp. 210, wherein a federal district court in Kentucky held that the duty to pay alimony terminated upon the death of the husband, even though the divorce decree for payments provided "so long as the wife shall live or until she remarries." The court based its construction of the decree upon a consideration of the fact that the parties were evidently dependent upon the husband's earnings for an income and there was not an estate sufficiently large to produce an income. We do not have before us in this case

any evidence concerning the size of the husband's estate; therefore the reasoning of that case is inapplicable here.

Also cited by the appellant are *Pike v. Pike*, 208 P. (2d) 380 (Cal. App.), and *In re Bernstein's Estate*, 203 N. Y. S. (2d) 191, 25 Misc. (2d) 717. In each of those cases, the property-settlement agreement did not provide that payments should be made during the life of the wife, but this provision was inserted in the decree by the court. The resulting ambiguity was properly resolved in favor of the estate. These cases are likewise not in point.

The parties were elderly people, who had lived together as man and wife and reared a family; and the wife was not in a position to support herself. The divorce was obtained because the husband desired his freedom. It was only natural and just, under the circumstances, that he should agree that his estate should be liable for the support of his wife if she survived him. The decree was open to such a construction and, to my mind, the court properly found that this was the intended meaning of the words used.

The majority, while it seems to say that it finds the decree lacking in the clear expression of intent necessary to sustain a finding that the obligation to pay alimony survived the death of the husband, nevertheless concedes that this may have been the intent of the parties and remands the case for the taking of evidence. It makes this disposition of the appeal without having determined that there is a disputed issue of fact in the case, and my examination of the record reveals that there is none. The case was submitted to the trial court on the pleadings, the decree of divorce, and the uncontroverted affidavit of the respondent; and this court is not in a position to say that the trial court erred in not considering other evidence.

In my opinion, the decree expressed the intent that the obligation to pay alimony should survive the death of the husband, with sufficient force and clarity to satisfy the requirements of the law.

I would affirm the judgment of the trial court.

FINLEY, HUNTER, and HALE, JJ., concur with ROSELLINI, J.