[No. 1257-1.    Division One—Panel 1.    June 19, 1972.]

BARBARA L. O'NEAL, *Respondent*, v. BARBARA E. MORRIS, as *Executrix*, *Appellant*.

*Merges, Brain, Youngberg, Allen & Larson* and *G. Robert Brain,* for appellant.

*Wettrick, Toulouse, Lirhus & Hove, R. Michael Stocking,* and *George J. Toulouse,* for respondent.

CALLOW, J.—A decree of divorce incorporated a property settlement agreement. The agreement provided that the husband would deliver to the wife a promissory note for $6,000, and she would hold the payments received thereon in trust for the benefit of the children. He also agreed to pay $62.50 per month per child for support of the minor children and "to continue such payments . . . until such child becomes self-supporting, married, enters the military service or becomes 21 years of age or deceased." It also stated, *inter alia:*

> That each of said parties do hereby waive any and all right to the estate of the other, left at his or her death, and forever quit claim any and all right to share in the same of the other, and they shall have all of the rights of single persons and maintain the same relation of such toward each other.

The property settlement agreement also provided that it was "irrevocable as between the parties, their heirs, devisees, or legatees."

The husband remarried following the divorce and subsequently died testate making no provision for his children by the first marriage. Following the rejection of a claim filed in the probate of the decedent's estate, the guardian of these children brought a civil action against the executrix claiming the obligation for support continued.

The trial court found an intention that the decedent would provide support for the children, that these support provisions would be binding upon the decedent's heirs, devisees, and legatees, would be operative after the death of the decedent and should be paid until each child reached 21 years of age. The findings then computed the projected future obligation of the estate and required $7,500 to be deposited in a trust account to fund the projected future support payments. It was concluded that the plaintiff was entitled to $4,545.01 for support due from the date of death to entry of the judgment and

## IV.

That, if for any reason paragraphs II and III of these conclusions were to be held to be in error, this court would be bound to treat this application as one for a family allowance under RCW 11.52.040, and under such circumstances would allow the plaintiff as guardian of her minor children, the amounts prayed for in the petition as and for family allowance under RCW 11.52.040.

The judgment entered in the civil cause in accordance with these findings and conclusions granted to the guardian the $4,545.01 for past support, required the executrix to set up the $7,500 trust fund, ordered the executrix to pay $62.50 per month per child until each child reaches 21 and stated that the balance remaining, if any, in the trust fund after the last child becomes of age would be returned to the executrix for distribution. No reference was made to an order for family allowance. The concern of the trial court for the children is understandable and commendable but cannot be upheld.

It is well settled that the obligation to pay support or alimony is personal and terminates upon the death of the obligor. *Bird v. Henke,* 65 Wn.2d 79, 395 P.2d 751 (1964); *DeRiemer v. Old Nat'l Bank,* 60 Wn.2d 686, 374 P.2d 973 (1962); *Scudder v. Scudder,* 55 Wn.2d 454, 348 P.2d 225 (1960); *Murphy v. Shelton,* 183 Wash. 180, 48 P.2d 247 (1935). Judicially decreed alimony or support payments terminate upon the death of a divorced obligor absent specific or manifestly clear and unmistakable provisions to the contrary. In *Bird v. Henke, supra* at 81 we find:

> In this jurisdiction there is no question that our courts have the necessary power to decree that the obligation to pay alimony shall survive the death of a divorced husband. In discussing this judicial power, and the implementation thereof, we said in *Murphy v. Shelton,* [*supra*] pp. 181, 182, 183 and 184:
> "Under the rule at common law, the obligation to pay alimony is regarded as a personal one and terminates upon the death of either the husband or the wife. [citing cases]
> "This rule has been modified by statute in many states,

so that now, generally, the courts have the *power* to provide in their decrees that alimony shall continue after the death of the obligor and be payable out of his estate. There is some diversity of opinion in the cases as to the degree of certainty that must appear in the decree itself relative to the time that the alimony is to continue.

. .. .

"In the light of the reasoning furnished us by the many cases upon the subject, and at the same time having due regard for the liberal policy obtaining in this state in such matters, we are of the view (1) that the court has the *power* to prescribe in its decree that alimony shall continue beyond death; but (2) that, if the court exercises such power, *the provision for continuance of such payments after death must either be specifically stated in the decree, or else its language must be so clear and unmistakable as to indicate that the court intended that the decree should have that effect. In the absence of specific statement or clear intention, it will be presumed that the payments abate upon the death of either spouse.*" (Italics ours.)

We reaffirmed this basic position in *Scudder v. Scudder,* 55 Wn. (2d) 454, 348 P. (2d) 225 (1960), and in *De-Riemer v. Old Nat. Bank of Spokane,* 60 Wn. (2d) 686, 374 P. (2d) 973 (1962). And, in further amplification of the clarity required to carry support obligations growing out of divorce decrees beyond the grave, we stated in the *Scudder* case, *supra,* an en banc decision interpreting a child support provision directing payments "during their minority":

". . . we are convinced that if a judicial decree is to be held to impose upon the father a greater duty of child support than that required by the common law, the decree must specifically state that such obligation is to survive the death of the obligor."

It is apparent, therefore, that, regardless of the attitude adopted by other jurisdictions, it has become the established policy and rule in this jurisdiction that judicially decreed alimony or support payments will abate upon the death of a divorced obligor, absent specific or manifestly clear and unmistakable decretal provision to the contrary.

The standard of clarity has not been met by the wording of the property settlement agreement incorporated into the

decree of divorce. The parties did not clearly and explicitly state that the obligation of support was to survive the death of the obligor. It is indicated instead that they waived any right to the estate of the other and, further, they set up a trust for the benefit of the children funded by payments on a promissory note which would survive as a claim against the estate. We understand the thrust of the rule to be that the obligation of child support is personal and exists during the life of the obligor, ceasing upon his death. The wording of the property settlement agreement that makes its provisions "irrevocable as between the parties, their heirs, devisees, or legatees" encompasses all personal and property rights and duties. Those words are not precisely pointed toward an imposition of support after death. It would have been simple enough to do so if that was the intent of the parties.

The parties may contract that the obligation for support or alimony will continue following the death of the obligor. The court may impose such a contract provision upon an obligor by including it in the decree of divorce; or, within his discretion, he may impose such an obligation in the decree which reflects his decision. However, if such be the intent of the parties or the court directly, it must be precisely and expressly so stated in the decree of divorce. The imposition of this obligation occurs upon entry of the divorce decree and is the responsibility of the court hearing the divorce action.

The obligation to pay support following death may be agreed upon in the property settlement agreement; and if there is no mention of the duty in the divorce decree, the commitment in the property settlement agreement controls. On the other hand, if the court does exercise its authority in this regard, the support and alimony provisions set forth in the property settlement agreement will be merged into the decree and be adjudicated issues. The parties may agree or the court may adjudicate, but in either case, the intention to impose the obligation must be clear and apparent. *DeRiemer v. Old Nat'l Bank, supra* at 689.

It is not for a trial court following the death of an obligor to impose upon his estate an obligation that was personal to him. The obligation must have been imposed in life and specifically reflected in the divorce decree. The obligor may be required to make appropriate support payments, and it may be found that this duty should be imposed not only upon him but also upon his estate until his children reach majority. However, such a continuing obligation must be imposed during his life so he is aware of the burden and has the opportunity to make an informed testamentary disposition of his property. As was said in *Scudder v. Scudder, supra* at 457:

> The real basis of the *Stone* decision [*Stone v. Bayley*, 75 Wash. 184, 134 P. 820 (1913)] is that this court held that it was the intention of the parties that the obligation of their *contract* should survive the husband's death.
>
> We think that the case at bar is not controlled by the *Stone* case because the decree before us approved the property settlement agreement "in every detail," and therefore the rights and duties of the parties arise by operation of law. Whereas originally the husband's obligation for support payments arose out of the provisions of the property settlement agreement, once these provisions were approved and confirmed by judicial decree, the husband's obligation to make such payments became subject to modification, alteration, and revision by the court. *Heuchan v. Heuchan*, 38 Wn. (2d) 207, 228 P. (2d) 470, 22 A. L. R. (2d) 1410 (1951).
>
> . . .
>
> . . . Standing alone, a decree ordering the husband to provide support for his minor children operates *in personam* and would not survive his death. *Esteb v. Esteb*, 138 Wash. 174, 244 Pac. 264; 246 Pac. 27, 47 A. L. R. 110 (1926). In this respect, it is no different from an alimony decree.
>
> . . .
>
> In conclusion, we are convinced that if a judicial decree is to be held to impose upon the father a greater duty of child support than that required by the common law, the decree must specifically state that such obligation is to survive the death of the obligor.

The comments in *DeRiemer* and *Scudder* on *Stone v. Bayley*, 75 Wash. 184, 134 P. 820 (1913), and *Cissna v.*

*Beaton,* 2 Wn.2d 491, 98 P.2d 651 (1940), establish that the rule was the same in 1957 when the husband and wife involved in this action executed this property settlement agreement.

It is suggested that whether the decree appropriately reflected the intent that the obligation survive is immaterial since the conclusions set forth the alternative that if paragraphs 2 and 3 of the conclusions were in error, the court would treat the application as one for family allowance and allow the amounts prayed for as a family allowance under RCW 11.52.040.

██    The award of a family allowance and the amount thereof are discretionary with the trial court. *In re Estate of Bernow,* 43 Wn.2d 369, 261 P.2d 414 (1953); *In re Estate of Armstrong,* 33 Wn.2d 118, 204 P.2d 500 (1949). The order for family allowance is an appealable order to be reviewed after its entry. It cannot be reviewed on an appeal from the order approving the final account and decree of distribution. *In re Estate of Kruse,* 52 Wn.2d 342, 324 P.2d 1088 (1958); *In re Estate of Schwarzwalter,* 47 Wn.2d 119, 286 P.2d 699 (1955). It appears, however, that whatever the findings and conclusions in the civil cause may contain, an order for family allowance has not been entered in the probate cause and therefore cannot be before us for review. It could not be made as a lump sum award in the civil action contesting the rejection of the claim filed in the probate. It must be made pursuant to RCW 11.52.040, pursuant to a petition filed in the probate cause, *Francon v. Cox,* 38 Wn.2d 530, 540, 231 P.2d 265 (1951), and in conformity with the local practice. King County Superior Court Probate Policy Manual §§ 10.6.1, 10.6.2, 10.7 (1969). The alternative conclusion cannot be sustained.

The judgment is reversed.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied July 17, 1972.

Review denied by Supreme Court August 18, 1972.