[No. 3370-1.    Division One.    September 13, 1976.]

OTTO J. VINCENT, *Appellant*, v. MABEL E. VINCENT, *Respondent.*

*Hennings, Maltman & Weber, John R. Weber,* and *Fredric D. Reed,* for appellant.

*Quigley, Hatch, Loveridge & Leslie, Arthur S. Quigley,* and *Edward M. Holpuch, Jr.,* for respondent.

ANDERSEN, J.—

FACTS OF CASE

The issues for decision in this case relate to whether an award of monthly payments to a former wife in a divorce decree is alimony, and if so, whether the former husband's obligation to pay it survives his death.

After 10½ years of marriage, a decree of divorce dissolving the parties' marriage was entered in March of 1971. The

plaintiff, Otto J. Vincent, was 75 years old at the time and the defendant, Mabel E. Vincent, was 62 years old. No children were born of the marriage.

Following a contested divorce trial in 1971, the court ruled in its oral decision:

> The Court is going to make an award to [Mrs. Vincent] in *alimony*, first of all, in the amount of $250 a month for the period of five years. In addition to that, in the division of the property, the Court is awarding to her . . .

(Italics ours.) The court's oral decision in this regard was carried over into the divorce decree which provided:

> That the defendant, Mabel E. Vincent, be and she hereby is awarded judgment against the plaintiff, Otto J. Vincent, for *alimony* in the amount of $250.00 per month, for a period of sixty (60) months, commencing with the month of February, 1971, provided, however, that said payments shall cease in the event of the death or remarriage of the said Mabel E. Vincent during this period.

(Italics ours.)

The findings of fact entered following the trial likewise denominated the $250 monthly sum as "alimony" (finding of fact No. 9) as did the conclusions of law (conclusion of law No. 6).

The 60 monthly payments of $250 each would thus ultimately have totaled the sum of $15,000, if all were paid. The monthly payments were regularly made until a total of about $10,000 was paid to the former wife, leaving approximately a $5,000 balance. At that time, the former husband, desiring to clear title to a piece of property he was selling, offered through his attorneys to pay the $5,000 balance in a lump sum, which offer the former wife did not accept.

Then on July 23, 1974, the former husband through his attorney filed a motion to direct the clerk of court to satisfy the alimony judgment on receipt of $5,000. On August 7, 1974, the attorney for the former husband paid the $5,000 into the registry of the court and obtained entry of an order directing the clerk to satisfy the judgment for alimony.

Two days later, on August 9, 1974, the attorney for the former husband ascertained that unbeknown to him, the former husband had passed away in California on August 2, 1974, several days prior to his obtaining the court order and paying the $5,000 into the registry of the court. The attorney thereupon promptly filed a motion pursuant to CR 60(b) to vacate the order and, pending a hearing on such motion, obtained a temporary restraining order prohibiting the clerk from paying out the $5,000 to the former wife.

The hearing in the trial court was held before a department other than the department in which the divorce trial had earlier taken place. The judge who presided at the hearing had before him the files and records in the divorce case as well as affidavits filed in connection with the motion to vacate the order. At the hearing on this matter, the motion to vacate brought by the decedent's administrator was denied, the temporary restraining order was quashed and the court ruled that the former wife was entitled to the $5,000. The court did, however, stay its order, except for $750 which was allowed to the former wife, during the pendency of this appeal. The court's oral decision rendered at the hearing showed that the ruling was based on the court's conclusion that the intent of the divorce trial court and the parties was that the $15,000 was a division of property payable in monthly installments rather than alimony.

The former husband's estate appeals. The order is appealable. CAROA 14(7).

## ISSUES

ISSUE ONE. Was the decedent's obligation to pay 60 $250 monthly installments alimony or a division of property?

ISSUE TWO. Did the death of the former husband terminate his obligation and that of his estate to continue making the $250 monthly payments?

ISSUE THREE. Is the former husband's estate entitled to vacate the order providing that the clerk satisfy the alimony judgment on the payment of $5,000 and obtain a refund of the $5,000 paid into the registry of the court by

the decedent's attorney, since the attorney had been unaware of his client's death at the time he obtained the order and paid the $5,000 into the registry of the court?

DECISION

ISSUE ONE.

CONCLUSION. The monthly payments of $250 each, by the former husband to the former wife, were alimony payments.

At the outset, we note that the court's decision here appealed from was based on the court file and records and on affidavits rather than on oral testimony. It, therefore, was not in any better position than this court with respect to determining the legal effect of the divorce decree.

The divorce having been contested and tried, the intent of the court at that trial and the language of its findings, conclusions, and judgment are paramount in ascertaining whether or not the monthly payments constituted alimony. See Bird v. Henke, 65 Wn.2d 79, 83, 395 P.2d 751 (1964). This is not a case where the intention of the parties must be determined in part from the language of a property settlement agreement.

The judge who presided at the trial of the divorce case denominated the $250 monthly payment to the wife as alimony in the oral decision, the findings of fact, the conclusions of law, and the divorce decree. The payments terminated on the death or remarriage of the wife. Other distinct portions of the oral decision, findings, conclusions, and divorce decree separately dealt with the division of the parties' property.

There is no ambiguity in the divorce decree nor in the findings and conclusions as they relate to alimony, so they are not open to construction. Carstens v. Carstens, 10 Wn. App. 964, 966, 521 P.2d 241 (1974).

We hold that the monthly payments of $250 each, by the former husband to the former wife, were alimony payments.

ISSUE TWO.

CONCLUSION. Judicially decreed alimony payments ter-

minate upon the death of a divorced obligor, absent specific or manifestly clear and unmistakable provisions in the divorce decree to the contrary. There was no such contrary showing here, and the former husband's obligation to make the $250 monthly alimony payments terminated upon his death.

The well-settled law of this state and the policy reasons behind it were comprehensively reviewed by Justice Hamilton writing for our State Supreme Court:

In this jurisdiction there is no question that our courts have the necessary power to decree that the obligation to pay alimony shall survive the death of a divorced husband. In discussing this judicial power, and the implementation thereof, we said in *Murphy v. Shelton*, 183 Wash. 180, 48 P. (2d) 247 (1935), pp. 181, 182, 183 and 184:

"Under the rule at common law, the obligation to pay alimony is regarded as a personal one and terminates upon the death of either the husband or the wife. [citing cases]

"This rule has been modified by statute in many states, so that now, generally, the courts have the *power* to provide in their decrees that alimony shall continue after the death of the obligor and be payable out of his estate. There is some diversity of opinion in the cases as to the degree of certainty that must appear in the decree itself relative to the time that the alimony is to continue. . . .

"In the light of the reasoning furnished us by the many cases upon the subject, and at the same time having due regard for the liberal policy obtaining in this state in such matters, we are of the view (1) that the court has the *power* to prescribe in its decree that alimony shall continue beyond death; but (2) that, if the court exercises such power, *the provision for continuance of such payments after death must either be specifically stated in the decree, or else its language must be so clear and unmistakable as to indicate that the court intended that the decree should have that effect. In the absence of specific statement or clear intention, it will be presumed that the payments abate upon the death of either spouse.*" (Italics ours.)

We reaffirmed this basic position in *Scudder v. Scud-*

*der,* 55 Wn. (2d) 454, 348 P. (2d) 225 (1960), and in *DeRiemer v. Old Nat. Bank of Spokane,* 60 Wn. (2d) 686, 374 P. (2d) 973 (1962). And, in further amplification of the clarity required to carry support obligations growing out of divorce decrees beyond the grave, we stated in the *Scudder* case, *supra,* an en banc decision interpreting a child support provision directing payments "during their minority":

". . . we are convinced that if a judicial decree is to be held to impose upon the father a greater duty of child support than that required by the common law, the decree must specifically state that such obligation is to survive the death of the obligor."

It is apparent, therefore, that, regardless of the attitude adopted by other jurisdictions, it has become the established policy and rule in this jurisdiction that judicially decreed alimony or support payments will abate upon the death of a divorced obligor, absent specific or manifestly clear and unmistakable decretal provision to the contrary.

We consider this rule a salutory one, if for no other reason than that it encourages the considered judgment inherent in clarity and certainty. It tends to exclude misunderstanding and ambiguity in an area of human relations where the emotions of the moment often conflict with afterthoughts, changing circumstances, death, and the intervention of third party interests. Abandonment of the rule would accomplish no practical result. Watering it down by sophisticated construction of questionable decretal language, however magnanimous the spirit, would lead but to confusion.

*Bird v. Henke,* 65 Wn.2d 79, 81-82, 395 P.2d 751 (1964). *Accord, O'Neal v. Morris,* 7 Wn. App. 157, 159, 498 P.2d 326 (1972); *Sutliff v. Harstad,* 5 Wn. App. 539, 544, 488 P.2d 288 (1971).

Judicially decreed alimony payments terminate upon the death of a divorced obligor, absent specific or manifestly clear and unmistakable provisions to the contrary.[1] There was no such contrary showing here and the former hus-

---

[1] A Washington statute, effective July 16, 1973, now provides:

Unless otherwise agreed in writing or expressly provided in the decree the obligation to pay future maintenance is terminated upon

band's obligation to make the $250 monthly alimony payments terminated upon his death.

ISSUE THREE.

CONCLUSION. The former husband's death terminated the authority of his attorney to act, and his estate is entitled to recover the $5,000 paid into court by such attorney subsequent to the former husband's death pursuant to the terms of an order also entered subsequent to the former husband's death. Such recovery, however, is subject to certain obligations as may have been incurred herein.

The former husband died on August 2, 1974. On August 7, 1974, the former husband's attorney, not knowing of his client's death, paid $5,000 into the registry of the court and obtained an order requiring the clerk to satisfy the alimony judgment.

A client's death terminates the relation of attorney and client and the attorney's authority to act by virtue thereof, unless the power of the attorney is coupled with an interest, or the employment by its terms is to extend beyond the happening of such event. 7 Am. Jur. 2d *Attorneys at Law* § 141 (1963); 7 C.J.S. *Attorney and Client* § 113, at 945 (1937).

Under the facts here presented, the client's death on August 2, 1974, terminated the attorney's authority to act and this was without regard to whether or not the attorney had knowledge of the client's death. 7 Am. Jur. 2d *Attorneys at Law, supra*; 7 C.J.S. *Attorney and Client, supra*. It follows that the payment of the $5,000 into the registry of the court by the attorney and his obtaining an order satisfying the alimony judgment, both of which occurred subsequent to the client's death, were done without the client's authority.

The decedent's estate was, therefore, entitled to have the

the death of either party or the remarriage of the party receiving maintenance.
RCW 26.09.170.

This provision is consistent with prior Washington law. *See* Rieke, *The Dissolution Act of 1973: From Status to Contract?*, 49 Wash. L. Rev. 375, 406 (1974).

order vacated and the monies paid into the registry of the court refunded pursuant to the provisions of CR 60(b) which authorizes relief from final judgments and orders in situations such as this one.

The former wife has made no factual showing nor presented legal authority which in our opinion would justify awarding the $5,000 to her on any other basis. Pursuant to the terms of CR 60(b) under which the estate brought its motion to vacate, however, she is entitled to such terms as in the sound discretion of the trial court are just.

For the reasons stated, we reverse the trial court's order of October 31, 1974, and remand the case to the trial court with the following instructions: (1) to determine the balance of monies, if any, owing to the former wife, as of the date of the decedent's death, as alimony or otherwise pursuant to the divorce decree; (2) to determine such terms, if any, as in the court's sound discretion should be assessed against the decedent's estate pursuant to CR 60(b); and (3) to enter an order providing that, after any deductions therefrom as herein provided, the balance of the $5,000 previously paid into the registry of the court by the former husband be returned to the administrator of his estate and that the clerk of court be thereupon required to satisfy any alimony judgment of record against the decedent's estate.

FARRIS, J., and HENRY, J. Pro Tem., concur.