[No. 12160-0–I.   Division One.   April 29, 1985.]

*In the Matter of the Marriage of* SARAH MASON, *Respondent, and* JOSEPH MASON, *Appellant.*

*Mary Ruth Mann,* for appellant.

*Karl E. Malling,* for respondent.

SWANSON, J.—This appeal arises from cross petitions to modify a decree of dissolution entered in 1978. The primary issue raised here is whether an award of "permanent alimony/maintenance" terminates upon the remarriage of the recipient by operation of RCW 26.09.170.

In 1978, the marriage of Sarah L. Mason and Joseph Mason was dissolved by a decree of dissolution. That decree awarded to both parents joint custody of their three minor children. However, the children were to reside with Joseph. The decree also awarded Joseph the family residence, but granted Sarah a $17,300 lien on the residence,[1]

---

[1]"This lien shall be paid in full when it is no longer occupied by the parties'

plus the sum of $200 per month as "permanent alimony/maintenance"[2] which was to be reduced to $150 per month once the lien on the family residence was paid in full.

At the time of the dissolution, Joseph was employed as an electrician by the University of Washington and received $1,138 per month net income. Sarah received monthly social security disability benefits of $328.55 because of impaired vision which prevented her from obtaining employment.

In February 1981, Sarah petitioned the court for a modification of the decree of dissolution to obtain residential custody of her minor child, Cyrelle Mason. Joseph filed his cross petition for a modification of the decree of dissolution on November 30, 1981, seeking to terminate his obligation to pay maintenance to Sarah based on her October 5, 1981, remarriage. The parties later entered into a stipulation granting Sarah residential custody of Cyrelle.

The cross petition proceeded to trial on August 18, 1982. The court found, among other things, that Sarah was totally disabled and her income was limited to social security related benefits; that Joseph was still employed by the University of Washington and received approximately $1,550 per month net income; that Sarah had married a 64-year-old man who was also on permanent social security disability; that Joseph had married a woman who had two children by a previous marriage, who was presently pregnant, and who had been previously employed; that Sarah had no savings other than the lien on the family residence;

children for a continuous period of six months or more; within one year of any remarriage of respondent [Joseph]; but at any rate, such lien shall not be paid off in full any later than five years from the date hereof. The lien shall provide for no interest."

[2]This award of "permanent alimony/maintenance" existed only in the decree of dissolution. It did not appear in the conclusions of law nor in the minutes of the trial court's oral decision. The relevant conclusion provided: "Respondent should pay to petitioner the sum of $200 per month as and for her maintenance. At such time as petitioner's lien on the family residence is paid in full, maintenance should be reduced to $150 per month."

and that Sarah had no apparent means of paying attorney fees incurred in this modification action.

Thus, the court concluded and decreed that (1) Sarah receive custody of Cyrelle pursuant to the parties' stipulation and $200 monthly child support; (2) Joseph's petition be denied (a) because the original decree provided for permanent maintenance which did not automatically terminate upon Sarah's remarriage, and alternatively, (b) because there had been no substantial change in circumstances; and (3) Joseph pay three–fourths of Sarah's attorney fees.

Before entry of the decree, Joseph moved for reconsideration arguing that Sarah's testimony was false in material respects, that he was unable to pay the support, maintenance, and expenses the court imposed upon him, and that Sarah's remarriage, as a matter of law, terminated his obligation to pay maintenance. Shortly thereafter, Joseph also moved for an order compelling discovery with respect to the amount of governmental payments received by Sarah, Cyrelle, and her new husband. These motions were denied and this appeal followed.

RCW 26.09.170 authorizes the court to award and continue maintenance beyond the date of remarriage of either spouse. *In re Marriage of Washburn,* 101 Wn.2d 168, 178, 677 P.2d 152 (1984). However,

> Unless otherwise agreed in writing or *expressly* provided in the decree the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

(Italics ours.) RCW 26.09.170.

Our decision, as to whether an award of "permanent alimony/maintenance" constitutes an "express" provision that the obligation survives remarriage, must rest upon the public policy underlying the award of alimony/maintenance. Our appellate courts have stated repeatedly: "It is not the policy of the law, nor is it either just or equitable, that a divorced wife be given a perpetual lien upon her divorced husband's future earnings." *Lockhart v. Lockhart,* 145 Wash. 210, 212–13, 259 P. 385 (1927). *See Berg v. Berg,* 72

Wn.2d ·532, 534, 434 P.2d 1 (1967); *In re Marriage of Brossman,* 32 Wn. App. 851, 859, 650 P.2d 246 (1982) (Durham, J., dissenting on other grounds), *review denied,* 98 Wn.2d 1017 (1983).

Tempered by this public policy, our Supreme Court discussed the level of clarity which a dissolution decree must possess if an award of alimony/maintenance is to survive the death of the party obligated to pay the alimony/maintenance.

> "In the light of the reasoning furnished us by the many cases upon the subject, and at the same time having due regard for the liberal policy obtaining in this state in such matters, we are of the view (1) that the court has the *power* to prescribe in its decree that alimony shall continue beyond death; but (2) that, if the court exercises such power, *the provision for continuance of such payments after death must either be specifically stated in the decree, or else its language must be so clear and unmistakable as to indicate that the court intended that the decree should have that effect. In the absence of specific statement or clear intention, it will be presumed that the payments abate upon the death of either spouse.*" (Italics ours.) [*Murphy v. Shelton,* 183 Wash. 180, 183–84, 48 P.2d 247 (1935)].

We reaffirmed this basic position in *Scudder v. Scudder,* 55 Wn. (2d) 454, 348 P. (2d) 225 (1960), and in *DeRiemer v. Old Nat. Bank of Spokane,* 60 Wn. (2d) 686, 374 P. (2d) 973 (1962). And, in further amplification of the clarity required to carry support obligations growing out of divorce decrees beyond the grave, we stated in the *Scudder* case, *supra,* an en banc decision interpreting a child support provision directing payments "during their minority":

> ". . . we are convinced that if a judicial decree is to be held to impose upon the father a greater duty of child support than that required by the common law, *the decree must specifically state that such obligation is to survive the death of the obligor.*"

It is apparent, therefore, that, regardless of the attitude adopted by other jurisdictions, it has become the established policy and rule in this jurisdiction that judicially decreed alimony or support payments will abate upon the death of a divorced obligor, absent specific or

manifestly clear and unmistakable decretal provision to the contrary.

We consider this rule a salutary one, if for no other reason than that it encourages the considered judgment inherent in clarity and certainty. It tends to exclude misunderstanding and ambiguity in an area of human relations where the emotions of the moment often conflict with afterthoughts, changing circumstances, death, and the intervention of third party interests. Abandonment of the rule would accomplish no practical result. Watering it down by sophisticated construction of questionable decretal language, however magnanimous the spirit, would lead but to confusion.

(Last italics ours.) *Bird v. Henke,* 65 Wn.2d 79, 81–82, 395 P.2d 751 (1964). *See also Vincent v. Vincent,* 16 Wn. App. 213, 554 P.2d 374 (1976) (the decree must contain "specific or manifestly clear and unmistakable" language that the obligation survives the death of the obligated party). *Webster's Third New International Dictionary* 803 (1969) also defines "express" to mean "directly and distinctly stated or expressed rather than implied or left to inference: not dubious or ambiguous". *See In re Marriage of Main,* 38 Wn. App. 351, 352, 684 P.2d 1381 (1984).

▇ The clarity of the decretal language is equally im–portant when an award of alimony/maintenance is desired to survive remarriage of the party receiving the alimony/maintenance. In *In re Marriage of Thach,* 29 Wn. App. 672, 630 P.2d 487 (1981), the decree granted the wife maintenance to assist her in completing her college education, but for no longer than 30 months. Because no provision referred to the effect of the wife's remarriage, we determined that maintenance, by statute (RCW 26.09.170) ceased upon her remarriage.

Similarly, in *In re Marriage of Melville,* 11 Wn. App. 879, 526 P.2d 1228 (1974), where the decree ordered the husband to pay alimony for 12 months, without referring to the effect of the wife's remarriage, we stated at page 881:

There being no express provision for the continuation of alimony after the remarriage of Mrs. Melville, Mr. Mel-

ville's obligation terminates upon the former's remarriage.

*See also In re Marriage of Harshman,* 18 Wn. App. 116, 567 P.2d 667 (1977) (maintenance obligation ceased upon wife's remarriage although the "original order did not provide that maintenance was to end upon the wife's remarriage." 18 Wn. App. at 127).

Sarah contends that, unlike the decrees in these cases, an award of "permanent alimony/maintenance" connotes more than mere duration, that it is an "express" provision that the obligation survives her remarriage. She relies on *Mose v. Mose,* 4 Wn. App. 204, 207, 480 P.2d 517 (1971), where the court noted that the wife had been awarded "permanent alimony (not to terminate upon her remarriage)." It is unclear from that opinion, however, whether the decree awarded "permanent alimony" to which the court appended the parenthetical definition or whether the decree specifically provided that the alimony was not to terminate upon her remarriage.

Other cases which use the term "permanent alimony" do so to indicate duration only. In these cases, the obligation is to continue until a change in circumstances occurs, and remarriage constitutes a change in circumstances.[3] For example, in *Warning v. Warning,* 5 Wn.2d 398, 399, 105 P.2d 715 (1940), the divorce decree awarded the wife monthly alimony "until her remarriage or until the further order of the court." The court noted at page 402:

> This is referred to by both of the parties, and is referred to in some of the cases, as *permanent* alimony. It is permanent in the sense that it continues until there is a change of conditions.

(Italics ours.) *Accord, Bartow v. Bartow,* 12 Wn.2d 408, 412, 121 P.2d 962 (1942) ("A decree for alimony is permanent in that it continues in force until a change in circumstances

---

[3]Compare the definition of "permanent" found in *Webster's Third New International Dictionary* 1683 (1969): "continuing or enduring . . . without fundamental or marked change: not subject to fluctuation or alteration".

occurs."). *Cf. Fisch v. Marler,* 1 Wn.2d 698, 97 P.2d 147 (1939) (failure to reserve jurisdiction prevents modification of otherwise "permanent alimony" despite changed conditions); *Ruge v. Ruge,* 97 Wash. 51, 165 P. 1063 (1917).

Guided by our Supreme Court's use of the term "permanent alimony" and the high level of certainty required in the decree of dissolution, we hold that RCW 26.09.170 requires the decree of dissolution to mention specifically (1) the event of remarriage of the party receiving alimony/maintenance (or the death of either party), and (2) the effect that event would have on the alimony/maintenance obligation. Merely awarding "permanent alimony/maintenance" is insufficient to fulfill the requirement of specific or manifestly clear and unmistakable language.

█ Sarah nevertheless contends that even if the maintenance obligation ceased upon her remarriage, the court had authority to continue the maintenance because the hearing on the petitions amounted to a de novo determination of maintenance. We disagree. Once final payment has been made pursuant to an alimony/maintenance provision from which no appeal is taken, the court may not reinstate that alimony obligation under the auspices that it amounts to a modification of the decree based upon changed circumstances. The court loses jurisdiction of a matter which has been finally resolved and forever extinguished. *Brown v. Brown,* 8 Wn. App. 528, 507 P.2d 157 (1973). Therefore, once the maintenance obligation ceased upon Sarah's remarriage, the court lost jurisdiction to modify the maintenance award.

█ We turn finally to the appellant's contention that the trial court abused its discretion when it ordered him to pay three-fourths of Sarah's costs and attorney fees.

The amount of attorney's fees awarded to the wife in a divorce case rests in the sound discretion of the trial court but must be based upon the financial need of the wife and the ability of the husband to pay. *Koon v. Koon,* 50 Wn.2d 577, 581, 313 P.2d 369 (1957); *Coons v. Coons,* 6 Wn. App. 123, 126, 491 P.2d 1333 (1972). Attorney's

fees may not be allowed when the wife has ability to pay since she is not entitled to free litigation. *Bang v. Bang,* 57 Wn.2d 602, 611, 358 P.2d 960 (1961).

*Cleaver v. Cleaver,* 10 Wn. App. 14, 22, 516 P.2d 508 (1973). An award of attorney fees, however, will not be reversed on appeal unless it is untenable or manifestly unreasonable. *Valley v. Selfridge,* 30 Wn. App. 908, 918, 639 P.2d 225 (1982).

The court ordered Joseph to pay in 24 equal monthly installments $3,981 which represented three–fourths of the court costs and attorney fees incurred by Sarah in this proceeding. This award was based on the court's findings that Sarah had a limited income, no savings other than the non-interest–bearing lien on the family residence, and attorney fee obligations of $3,415 arising from the original dissolution proceeding that had to be paid when Joseph retired the $17,300 lien.

At the time the findings were entered Joseph had not paid the $17,300. Since that time, however, he has paid that debt. There are no findings that once Sarah received the $17,300 she would be unable to pay her attorney fees. Nor is there a finding that Joseph had the ability to pay Sarah's attorney fees. Additionally, based on affidavits filed in support of his motion for reconsideration, it is apparent that Joseph lacks the ability to pay Sarah's attorney fees. Therefore, the award of attorney fees is vacated.

Accordingly, the judgment awarding attorney fees and maintenance is reversed.

SCHOLFIELD, A.C.J., and RINGOLD, J., concur.

Reconsideration denied July 16, 1985.

Review denied by Supreme Court October 4, 1985.