[No. 23199–5–I. Division One. December 4, 1989.]

*In the Matter of the Marriage of* SANDRA RAE WILLIAMS, *Appellant, and* JAMES ELDON WILLIAMS, *Respondent.*

*Ralph Maimon* and *Oseran, Hahn, Kelley, Spring & Maimon,* for appellant.

*Jeffrey Stofsky,* for respondent.

RINGOLD, J.*—Sandra Rae Williams and James Eldon Williams were married in 1960. Sandra worked to support the family while James acquired a master's degree in engineering. Sandra then became a full–time homemaker until 1978 when she began some part–time employment in the retail field. In January 1985, the parties separated, and in 1987 the wife filed a petition for dissolution of the marriage.

The parties, with the guidance of Northwest Mediation Service, entered into a settlement agreement which contained a detailed provision for maintenance payable by the husband to the wife for a period of 4 years to enable her to obtain a college education. The property settlement agreement and the dissolution decree filed August 2, 1988, both contained the following language concerning termination of maintenance:

> The maintenance payments hereinabove provided shall continue until the earliest of the following events:
> Wife's death or the expiration of the time limits hereinabove provided.
> Pursuant to RCW 26.09.090(7) [*sic*][1] these provisions as to spousal maintenance shall not be modifiable by either party. In no event shall any court have jurisdiction to modify these maintenance provisions.

---

*Judge Solie M. Ringold is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150 and CAR 21(c).

[1]Review of the statute makes it clear that the intended reference was not to RCW 26.09.090(7), which does not exist, but to RCW 26.09.070(7) which concerns modification of separation contracts.

A few days after the dissolution decree was entered Sandra remarried. Upon learning of the marriage, James filed a motion to terminate his obligation to pay maintenance, or, alternately, to vacate the decree. A family court Commissioner denied James' motion to terminate maintenance and denied Sandra's motion for attorney's fees. James' motion to vacate the decree was withdrawn. Both parties then moved for revision of Commissioner's ruling.

The Superior Court Judge revised the Commissioner's order and entered the following judgment:

> [T]he Court finding that the cases of *In re Marriage of Thach,* 29 Wn. App. 672, and *In re Marriage of Mason,* 40 Wn. App. 450 are on point, and the Court further finding that *in order for the continuation of spousal maintenance under RCW 26.09.170, there must be an express provision as to the effect of remarriage, either in the Decree or in the written Property Settlement Agreement,* and the Court being and deeming itself fully advised in the premises, now, therefore, it is hereby. . . .
>
> IT IS FURTHER ORDERED, ADJUDGED and DECREED that the Respondent's obligation to pay spousal maintenance terminated by operation of law as of the date of the Petitioner's remarriage . . .

(Italics ours.) The court also awarded judgment to James against Sandra in the amount of $1,806.50 for spousal maintenance paid by James subsequent to Sandra's remarriage, and $500 for attorney's fees.

Sandra appeals the judgment contending that the husband remains obligated to pay spousal maintenance despite her remarriage. She also seeks an award of attorney's fees below and on appeal.

The governing statute, RCW 26.09.170(2), reads:

> Unless otherwise agreed in writing or expressly provided in the decree the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

The basic issue here is whether the provisions of the settlement agreement regarding termination of maintenance satisfy the requirements of the statute so as to require the husband to continue to pay maintenance after the wife's remarriage. We answer yes and reverse.

The husband's position here is supported by the most recent case on this issue, *In re Marriage of Rufener*, 52 Wn. App. 788, 764 P.2d 655 (1988), *review denied*, 112 Wn.2d 1008 (1989). In that case, as here, the parties entered into a separation agreement which was subsequently incorporated into the dissolution decree. The agreement provided for maintenance to be paid for 50 months and included a provision "that Husband's obligation to pay the maintenance in said amount shall cease upon the death of Wife." 52 Wn. App. at 789. The decree was entered in September of 1986 and the wife remarried in April of 1987. In October of 1987 she moved to modify the method by which the husband was to pay maintenance. The husband responded with a motion to terminate his maintenance obligation. The trial court ruled in favor of the husband.

The appellate court upheld the trial court stating:

> The sole issue is whether the spousal maintenance provision terminated upon Ms. Butler's remarriage. Former RCW 26.09-.170 provided in relevant part:
>
>> Unless otherwise agreed in writing or expressly provided in the decree the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.
>
> To avoid this statute's effect, a separation agreement or decree of dissolution must mention specifically:
>
>> (1) the event of remarriage of the party receiving alimony/maintenance (or the death of either party), and (2) the effect that event would have on the alimony/maintenance obligation. Merely awarding "permanent alimony/maintenance" is insufficient to fulfill the requirement of specific or manifestly clear and unmistakable language.
>
> *In re Marriage of Mason*, 40 Wn. App. 450, 457, 698 P.2d 1104, *review denied*, 104 Wn.2d 1017 (1985); *see In re Marriage of Thach*, 29 Wn. App. 672, 674–75, 630 P.2d 487 (1981). Here, both the separation agreement and the decree are silent as to the effect of remarriage. Therefore, the obligation to pay future maintenance was terminated by statute.

(Footnote omitted.) *In re Marriage of Rufener, supra* at 790. James argues that *Rufener, In re Marriage of Mason*, 40 Wn. App. 450, 698 P.2d 1104, *review denied*, 104 Wn.2d 1017 (1985) and *In re Marriage of Thach*, 29 Wn. App. 672, 630 P.2d 487 (1981) are dispositive.

The wife contends that the statute allows maintenance awards to survive remarriage of the recipient in *two* situations: (1) where the decree expressly so provides, or (2) where the parties have "otherwise agreed in writing".

Without any discussion of the effect of this statutory language, the Washington appellate courts have simply required "express" provisions concerning remarriage in *both* decrees and settlement agreements. The *Rufener* case is based upon a series of earlier cases including *In re Marriage of Mason, supra,* and *In re Marriage of Thach, supra.* None of these cases answer the question of what will satisfy the alternative statutory requirement, "otherwise agreed in writing".

 The agreement at issue specifies two future events (neither being remarriage), the "earliest" of which is to terminate the payment of maintenance. The interpretation by the wife is supported by the rules of statutory construction. RCW 26.09.170(2) contains disjunctive language ("or") and must be construed accordingly. *State v. Tiffany,* 44 Wash. 602, 87 P. 932 (1906); *Masunaga v. Gapasin,* 52 Wn. App. 61, 757 P.2d 550 (1988). Courts are to relate a qualifying word ("expressly") to the last antecedent. *State v. Lodge,* 42 Wn. App. 380, 711 P.2d 1078 (1985); *Boeing Co. v. Department of Licensing,* 103 Wn.2d 581, 693 P.2d 104 (1985). The construction urged by James renders the "unless otherwise agreed in writing" portion of the statute superfluous. The courts are obligated to interpret a statute, if possible, so that no portion of it is superfluous. *Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 288, 494 P.2d 216 (1972).

██ Other state courts differ in their construction of statutes similar to RCW 26.09.170(2). In *Gunderson v. Gunderson,* 408 N.W.2d 852 (Minn. 1987), the court held that maintenance did not survive remarriage, because "not expressly provided" in the decree. The court, however, considered whether the parties had agreed in writing when they entered into an oral stipulation, not officially part of

the record. *Gunderson*, at 853–54. *In re Marriage of Sherman*, 162 Cal. App. 3d 1132, 208 Cal. Rptr. 832 (1984) held that the written agreement had the clear import to establish the intent of the parties that maintenance should not terminate upon remarriage.

The validity of *Rufener* is doubtful in light of decisions reached in analogous cases concerning the termination of child support. As here the statute provides:

> *Unless otherwise agreed in writing or expressly provided in the decree,* provisions for the support of a child are terminated by emancipation of the child or by the death of the parent obligated to support the child.

(Italics ours.) RCW 26.09.170(3). In *In re Marriage of Anderson*, 49 Wn. App. 867, 746 P.2d 1220 (1987), the trial court refused to continue child support payments for education purposes beyond the daughter's 18th birthday. This court held that language which provides for payment of support *"so long as the children remain dependent"* is express and specific enough to evidence an intention that an event other than emancipation would govern the duration of the father's support obligations. *Accord, In re Marriage of Nielsen*, 52 Wn. App. 56, 57, 757 P.2d 537, *review denied*, 111 Wn.2d 1023 (1988), wherein court–ordered payment of child support "until the dependent children of these parties is [*sic*] emancipated and no longer dependent upon the parties hereto" was found sufficiently "express" to extend support beyond emancipation.

Both *Nielsen* and *Anderson* are "decree" cases to which the "expressly provided" statutory language applies. If child support payments survived statutory termination in those cases, logically it would follow that the language of the agreement at issue herein would be sufficient to insure that maintenance payments survive remarriage.

The maintenance provided for Sandra here is strictly designed to enable her to receive a college education. The remarriage of the wife has little to do with the necessity or desire of the wife to pursue more education. This court recently addressed a similar issue—the termination of

maintenance due to the recipient's cohabitation. *In re Marriage of Tower,* 55 Wn. App. 697, 704 n.4, 780 P.2d 863 (1989). This court held the court–ordered termination of maintenance based on cohabitation to be against public policy. Only where such cohabitation resulted in reduced financial need would termination or modification be appropriate. At footnote 4 the court said:

> We believe this approach could be applied to considering whether maintenance should be terminated upon remarriage of the recipient spouse. *Although RCW 26.09.170(2) establishes a presumption that maintenance will terminate upon remarriage, it does not require that result.* Indeed, a very recent study of gender bias in Washington courts recommends that the Legislature reevaluate the statute's presumptive automatic termination of maintenance upon remarriage. Washington State Task Force, *Gender and Justice in the Courts* 145 (1989). We concur in this recommendation.
>
> RCW 26.09.170(2) reflects the traditional assumption that wives are supported by their husbands and, therefore, maintenance need not survive remarriage. This assumption no longer corresponds with reality. In the United States, the percentage of married women employed outside the home rose to 50 percent by 1980, and is projected to reach 67 percent by 1990. L. Weitzman, *The Marriage Contract* 169–70 (1981). Three–quarters of married women working do so full time. "In an era of double–digit inflation, when an ordinary car costs $10,000 and a modest house goes for $100,000, most families desperately need two incomes just to pay their bills." L. Weitzman, at 172. Moreover, many men who remarry have substantial child support/maintenance obligations from a prior marriage and are unable to support a second wife. Consequently, requiring termination of a woman's maintenance upon remarriage limits her remarriage to those men of sufficient means to fully support a wife. This is a harsh and unjust result that does not further sound public policy.

(Italics ours.) *In re Marriage of Tower, supra* at 704 n.4. Sandra has prevailed in this matter and she is entitled to fees on appeal and below as provided by the parties' settlement agreement:

> Should it become necessary for either party to seek judicial enforcement of any of the provisions of this agreement or of any decree entered in accordance herewith, the prevailing party shall be awarded his or her reasonable attorneys fees and costs.

In this court the wife has complied with RAP 18.1 and submitted a fee affidavit documenting reasonable fees and costs of $5,113.85. James is directed to pay these expenses. *Federal Land Bank v. Redwine,* 51 Wn. App. 766, 770, 755 P.2d 822 (1988). We also hold that the trial court erred in terminating maintenance and thereafter reverse the judgment against Sandra for $1,806.50 in spousal maintenance paid after remarriage and $500 in attorney fees to James.

We reverse the trial court's judgment and remand for the allowance of attorney fees to Sandra as the prevailing party in the trial court and here.

GROSSE, A.C.J., and PEKELIS, J., concur.

Review granted at 114 Wn.2d 1014 (1990).