[No. 56884-7.   En Banc.   September 6, 1990.]

*In the Matter of the Marriage of* SANDRA RAE WILLIAMS, *Respondent, and* JAMES ELDON WILLIAMS, *Petitioner.*

*Jeffrey Stofsky* and *Edwards, Sieh, Wiggins & Hathaway, P.S.,* by *Malcolm L. Edwards* and *Catherine W. Smith,* for petitioner.

*Oseran, Hahn, Van Valin & Watts, P.S.,* by *Ralph Maimon,* for respondent.

UTTER, J.—The Superior Court held that James Williams' agreement to pay maintenance to his former wife, Sandra, terminated upon her remarriage. This decision was reversed by the Court of Appeals in *In re Marriage of Williams,* 56 Wn. App. 138, 782 P.2d 1087 (1989). We reverse the Court of Appeals and hold that spousal maintenance terminates upon remarriage absent *specific* language to the contrary in the decree.

I

Sandra Rae Williams and James Eldon Williams were married in 1960. In January 1985, they separated, and Sandra filed a petition for dissolution of the marriage.

The parties, with the guidance of Northwest Mediation Service and the assistance of counsel, entered into a settlement agreement. Clerk's Papers, at 1–16. The agreement required the husband to pay maintenance to the wife for 4 years or until she finished her bachelor's degree, whichever came first. Clerk's Papers, at 7. It also stated that its maintenance provisions were not modifiable by a court. Clerk's

Papers, at 12. *See* RCW 26.09.070(7). It did not, however, explicitly address the effect of remarriage.

The trial court dissolved the marriage on August 2, 1988, and incorporated the agreement in its decree. Indeed, the decree recites verbatim the rather detailed provisions for spousal maintenance contained in the settlement. Clerk's Papers, at 33–36.

A few days after the dissolution decree was entered, Sandra remarried. James filed a motion to terminate his obligation to pay maintenance. A family court commissioner denied James' motion to terminate maintenance and denied Sandra's motion for attorney fees.

Both parties moved to revise the commissioner's ruling in Superior Court before Judge Norman Quinn. He held that the husband's obligation terminated by operation of law. *See* RCW 26.09.170(2). He relied upon two Court of Appeals decisions which required that the decree or the settlement agreement must contain a provision expressly mentioning remarriage in order to overcome the statutory presumption that the receiving spouse's remarriage terminates alimony. *See In re Marriage of Thach,* 29 Wn. App. 672, 630 P.2d 487 (1981); *In re Marriage of Mason,* 40 Wn. App. 450, 698 P.2d 1104, *review denied,* 104 Wn.2d 1017 (1985); RCW 26.09.170(2). Judge Quinn ordered Sandra to pay James $1,806.50 for spousal maintenance paid since her remarriage and $500 for attorney fees.

Sandra appealed to Division One of the Court of Appeals, which reversed the trial court, ruling that the maintenance obligation did not terminate by operation of law. *In re Marriage of Williams,* 56 Wn. App. 138, 142, 782 P.2d 1087 (1989). It based its holding primarily upon the text of the dissolution act of 1973, which reads:

> Unless otherwise agreed in writing or expressly provided in the decree the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

Laws of 1973, 1st Ex. Sess., ch. 157, § 17, p. 1224 (codified as amended at RCW 26.09.170(2)). The court reasoned that

the agreement reached by the parties satisfied the "otherwise agreed in writing" requirement, even though it contained no specific provision addressing the effect of remarriage. *Williams,* at 142–44.

This decision created a conflict with at least two cases of Division Three, *see In re Marriage of Thach, supra; In re Marriage of Rufener,* 52 Wn. App. 788, 764 P.2d 655 (1988). We granted discretionary review in order to resolve the conflict between divisions.

## II

Our decisions prior to the dissolution act of 1973 require specific decretal provisions in order to overcome presumptive termination of alimony by operation of law. The 1973 dissolution act made remarriage an event which presumptively terminates alimony, but did not change the specific decretal language requirement in the case law.

Prior to 1973, remarriage did not presumptively terminate alimony. *Hanson v. Hanson,* 47 Wn.2d 439, 287 P.2d 879 (1955); *Fisch v. Marler,* 1 Wn.2d 698, 710–11, 97 P.2d 147 (1939). The death of either party, however, presumptively terminated the obligation by operation of law. *DeRiemer v. Old Nat'l Bank,* 60 Wn.2d 686, 374 P.2d 973 (1962).

We have consistently held that the dissolution decree must contain specific language in order to overcome the presumption that alimony terminates upon the death of either party. *Murphy v. Shelton,* 183 Wash. 180, 183–84, 48 P.2d 247 (1935) ("the provision for continuance of such payments after death must either be specifically stated in the decree, or else its language must be so clear and unmistakable as to indicate that the court intended that the decree should have that effect"); *Bird v. Henke,* 65 Wn.2d 79, 83, 395 P.2d 751 (1964) (obligation to pay wife alimony as long as the wife shall live terminates upon husband's death); *DeRiemer,* 60 Wn.2d at 690.

We have also held that this requirement applies even when the decree incorporates a property settlement between the parties. In *DeRiemer,* we rejected a claim that alimony payments survive the death of the payor, relying upon the rule that alimony payments do not survive the death of the payor absent express provision in the decree. *DeRiemer,* at 690. The payee in that case argued that the settlement agreement indicated that the monthly payments were not alimony, but part of a property settlement. *DeRiemer,* at 688. Hence, the obligation would not cease upon the death of the payor. We rejected this argument emphatically. Our opinion stated, "the contract becomes a nullity when the court's decree has been entered". *DeRiemer,* at 689.

Until *Williams,* the Court of Appeals had read the 1973 act as extending the common law presumption that death terminated alimony to the event of remarriage. *Rufener; Mason; Thach. See also* Rieke, *The Dissolution Act of 1973: From Status to Contract?,* 49 Wash. L. Rev. 375, 406 (1974). Accordingly, the specific decretal language requirement applied to claims that the remarriage did not terminate an obligation after 1973, just as it had applied to claims that death did not terminate an obligation prior to 1973. *Rufener* (an award of alimony until death of the wife terminates upon her remarriage); *Mason* (permanent alimony terminates upon remarriage absent specific decretal provision to the contrary); *Thach* (alimony awarded for 30 months to assist wife in obtaining college education terminates upon remarriage). *See also Vincent v. Vincent,* 16 Wn. App. 213, 218 n.1, 554 P.2d 374 (1976) (decree terminates alimony upon death of payor absent clear statement in the decree, notwithstanding 1973 statutory amendment). *Rufener* applied the specific decretal language to a decree incorporating an agreement between the parties, like the decree in this case. *See Rufener,* at 790.

The Court of Appeals rejected prior precedent because, in its opinion, the language of the statute governing the

presumption that remarriage or death terminates an alimony obligation compelled this result. *Williams,* at 142. That statute states:

> Unless otherwise agreed in writing or expressly provided in the decree the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

RCW 26.09.170(2).

The Court of Appeals apparently believed that a settlement agreement lacking the specificity required in a decree suffices to overcome the statutory presumption. It noted that the adverb "expressly" only applies to provisions in a decree, not to written agreements. *Williams,* at 142. It suggested that the phrase "otherwise agreed in writing" must mean something less than the phrase "expressly provided for." Applying that principle to this case directly contradicts the principle that a decree incorporating a settlement governs the rights of the parties, not the settlement agreement.

According to the Court of Appeals, interpreting the provision to require express provision in the settlement agreement incorporated in the decree would render the "otherwise agreed in writing" language superfluous. *Williams,* at 142–43 (citing *Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 288, 494 P.2d 216 (1972)). Similarly, Sandra argues that application of the doctrine of merger, the doctrine merging the settlement agreement into the decree, cannot survive the 1973 act because it would render statutory language superfluous.

The survival of prior case law would not, however, make the otherwise agreed language in the statute superfluous; it would merely narrow its scope. The otherwise agreed in writing language would only apply to cases where no decree has been issued or where the decree declared that the agreement shall survive the decree. *See, e.g., Stone v. Bayley,* 75 Wash. 184, 134 P. 820 (1913) (agreement not incorporated into a decree providing child support during the

minority of a child does not terminate obligation upon payor's death); *In re Marriage of Olsen,* 24 Wn. App. 292, 297–98, 600 P.2d 690 (1979) (contract survives divorce decree because the Mexican court decided that it would); *cf. Scudder v. Scudder,* 55 Wn.2d 454, 460, 348 P.2d 225 (1960) (settlement incorporated in decree requiring that Dr. Scudder support his children during their minority does not survive his death).

In fact, principles of statutory construction compel us to overrule the Court of Appeals and reaffirm our precedent in this area. The Legislature is presumed to be aware of judicial construction of prior statutes. *In re Marriage of Little,* 96 Wn.2d 183, 189–90, 634 P.2d 498 (1981). Absent an indication that the Legislature intended to overrule the common law, new legislation will be presumed to be consistent with prior judicial decisions. *State v. Calderon,* 102 Wn.2d 348, 351, 684 P.2d 1293 (1984); *State v. McCullum,* 98 Wn.2d 484, 493, 656 P.2d 1064 (1983); *Glass v. Stahl Specialty Co.,* 97 Wn.2d 880, 887–88, 652 P.2d 948 (1982); *Green Mt. Sch. Dist. 103 v. Durkee,* 56 Wn.2d 154, 161, 351 P.2d 525 (1960). The Legislature did not indicate it intended to overrule our prior case law requiring decretal specificity.

A number of states require specific decretal language to overcome presumptive termination of maintenance obligations by operation of law. The Minnesota Supreme Court recently concluded that court–ordered alimony, of 42 months' duration, terminated before the expiration of that period if one of the parties remarried. *In re Marriage of Gunderson,* 408 N.W.2d 852 (Minn. 1987). It held that remarriage terminated the obligation in spite of trial court findings that the parties intended the obligation to continue. The court stated that the "clear and unambiguous" language of the statute did not allow it to continue maintenance beyond remarriage absent express provision in the decree.

In the wake of *Gunderson,* the Minnesota Court of Appeals rejected an argument based on an agreement

almost exactly like the one before this court. The dissolution decree in that case, like the decree in this case, required the husband to pay his wife maintenance for 48 months or until she completed her bachelor's degree. *Peterson v. Lobeck,* 421 N.W.2d 367, 368 (Minn. Ct. App. 1988). The court held that since neither the dissolution agreement nor any other written agreement provided that maintenance was to continue following remarriage, remarriage terminated the obligation. *Peterson,* at 368.

We are aware of the fact that the Washington State Task Force on Gender and Justice in the Courts has recommended that the Legislature repeal the provision we are interpreting. Washington State Task Force, *Gender and Justice in the Courts* 145 (1989). We, however, may not repeal the statute through questionable judicial construction.

The policy of the statute is to create a presumption that remarriage terminates alimony, as the Court of Appeals recognized. *Williams,* at 144. The Legislature apparently intended, however, to allow trial courts the power to award maintenance beyond remarriage in appropriate cases and to allow parties to contract around the presumption.

█ Departure from the rule requiring "specific or manifestly clear and unmistakable decretal provision" to overcome a statutory presumption would only eviscerate the law. We have explained:

> We consider this rule a salutory [*sic*] one, if for no other reason than that it encourages the considered judgment inherent in clarity and certainty. It tends to exclude misunderstanding and ambiguity in an area of human relations where the emotions of the moment often conflict with afterthoughts, changing circumstances, death, and the intervention of third party interests. Abandonment of the rule would accomplish no practical result. Watering it down by sophisticated construction of questionable decretal language, however magnanimous the spirit, would lead but to confusion.

*Bird v. Henke,* 65 Wn.2d at 82.

Other state supreme courts have similarly recognized that the policy of requiring clear language to overcome

statutory presumptions is salutary. The Georgia Supreme Court recently adopted a clarity standard similar to the one we have had in Washington for some time. *Daopoulos v. Daopoulos*, 257 Ga. 71, 354 S.E.2d 828 (1987). The court reasoned:

> Had the drafter of the agreement squarely faced the issue undoubtedly there would have been an expression clearly conveying to the reader whether remarriage would terminate the alimony obligation. . . .

*Daopoulos*, at 72.

■ This decree declares that maintenance will be paid until Sandra completes her bachelor's degree or until 4 years pass, whichever comes first. This speaks no more specifically to the parties' intentions as to the effect of remarriage than an agreement to pay permanent alimony or alimony for a fixed period not linked to the educational needs of a spouse. Accordingly, we hold that the dissolution decree lacked the specific language necessary to overcome the statutory presumption. In the hopes of discouraging dubious interpretation of questionable decretal language, we hold further that the decree must specifically mention remarriage in order to overcome the presumption. Specific decretal language means just that. James' obligation terminated on the day Sandra remarried. We reverse the Court of Appeals and reinstate the trial court's decision. We grant James' request for attorney fees,[1] but remand to the trial court for a determination of the proper amount. RAP 18.1(e).

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

Reconsideration denied December 4, 1990.

---

[1] Both parties agree that the prevailing party is entitled to attorney fees under their agreement.