

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2015 JUN 22 AM 9: 39

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Trustee's Sale of the real property of: | DIVISION ONE |
| THE HEIRS OR DEVISEES OF ALAN E. JAMES, DECEASED, THEIR INTEREST BEING SUBJECT TO ADMINISTRATION OF THE ESTATE OF SAID DECEDENT. | No. 71458-9-I |
| | UNPUBLISHED OPINION |
| The heirs and devisees of ALAN E. JAMES, deceased, by and through CAROLANNE STEINBACH, personal representative, | |
| Appellant, | |
| v. | |
| BANK OF AMERICA, N.A., | |
| Respondent. | FILED: June 22, 2015 |

DWYER, J. — When a deed of trust is executed by one member of a marital community, but not the other, it may be avoided at the election of the nonjoining member. In this matter, because the nonjoining member did not exercise her power to avoid a deed of trust that had been executed by her husband, the recorded deed, which secured a second position loan on the couple's real property, remained in effect. Consequently, after both husband and wife had died and the property had been sold at a nonjudicial foreclosure sale, the surplus

proceeds generated from the sale were properly disbursed to the beneficiary of the deed securing the second position loan. We affirm.

I

Alan and Dorathy James,[1] a married couple, owned a parcel of real property (the Property) in Federal Way, Washington. The Property, which was the couple's homestead residence, was financed by two loans—the first was executed by both Alan and Dorathy; the second was executed by Alan only.

In March 1999, the couple obtained a $60,550 loan from Washington Mutual Bank by executing a promissory note in favor of Washington Mutual. As security for the note, the couple executed a deed of trust. Both Alan and Dorathy signed the note and deed. This was the first position loan.

In November 2006, Alan obtained a $115,000 loan from Bank of America (BofA) by executing a promissory note in favor of BofA. As security for the note, Alan executed a deed of trust. Only Alan signed the note and deed. This was the second position loan.

A short time later, in January 2007, Dorathy died intestate.

On September 6, 2007, BofA recorded the deed of trust securing the second position loan.

On October 10, 2007, Alan recorded a personal representative's deed, transferring title in the Property solely to himself. Nearly four years later, on July 9, 2011, Alan died, leaving two children—Alan James II and Carolanne Steinbach—as his heirs.

---

[1] We refer herein to Alan and Dorathy by their given names. No disrespect is intended.

Several years after Alan's death, the successor trustee to the deed of trust securing the first position loan initiated a nonjudicial foreclosure proceeding. This proceeding culminated in the sale of the Property, on June 28, 2013, for $162,000. After the debt to the senior lienholder had been satisfied, the successor trustee deposited the surplus proceeds from the sale with the clerk of the King County Superior Court and filed a notice of deposit. The surplus proceeds totaled $97,369.43.

Following the filing of the notice of deposit, Alan's estate (the Estate) asserted a claim to the surplus proceeds. BofA, too, asserted a claim to the surplus proceeds. The dispute between the two claimants centered on whether the deed of trust securing the second position loan, which was executed in favor of BofA, was void as a matter of law, as a consequence of Dorathy's missing signature.

On December 5, 2013, the trial court ruled in favor of BofA:

> The Estate argues that the deed of trust signed only by Mr. James is void and unenforceable because a homestead cannot be encumbered unless it is acknowledged by both spouses. RCW 6.13.060. However, homestead laws are designed to protect one's home from creditors with a homestead being defined as real or personal property that an owner uses as a residence. RCW 6.13.010. This court agrees with Bank of America that Mrs. James' homestead rights were extinguished when she died and the Estate of Mr. James does not have legal standing to assert her rights or defenses.

The court then ordered "that all funds being held in the court registry up to $97,369.43 and any interest thereon" be disbursed to BofA.

The Estate's motion for reconsideration was denied.

- 3 -

The Estate now appeals.

II

The Estate contends that the trial court erred in ordering disbursal of the surplus proceeds to BofA. According to the Estate, BofA did not have a secured interest in the Property. This is so, it asserts, because the deed of trust securing the second position loan was void as a matter of law, as a consequence of Dorathy's missing signature. We disagree.

A trial court's order disbursing surplus proceeds is reviewed de novo when the parties on appeal do not dispute the underlying facts but, rather, dispute the proper application of the law to the undisputed facts. Tr.'s Sale of Real Prop. Of Burns, 167 Wn. App. 265, 271, 272 P.3d 908 (2012); In re Tr.'s Sale of Upton, 102 Wn. App. 220, 223, 6 P.3d 1231 (2000). Questions of statutory interpretation are also reviewed de novo. Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 946, 247 P.3d 18 (2011).

The issue of whether the deed of trust securing the second position loan was void or voidable turns on the proper interpretation of several statutory provisions. "Our primary duty in interpreting a statute is to discern and implement legislative intent." Johnson, 159 Wn. App. at 946 (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). If a "statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Campbell & Gwinn, 146 Wn.2d at 9-10. "The plain meaning of a statute may be discerned 'from all that the Legislature has said in the statute and related statutes which disclose legislative

intent about the provision in question.'" State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting Campbell & Gwinn, 146 Wn.2d at 11).

"The entire sequence of statutes enacted by the same legislative authority, relating to the same subject matter, should be considered in placing a judicial construction upon any one of the acts." In re Marriage of Little, 96 Wn.2d 183, 189-90, 634 P.2d 498 (1981). In doing so, we presume that the legislature is aware of its past legislation and any judicial interpretations thereof. Little, 96 Wn.2d at 189. Given this presumption, "statutes will not be construed in derogation of the common law absent express legislative intent to change the law." Wynn v. Earin, 163 Wn.2d 361, 371, 181 P.3d 806 (2008). Indeed, "'[i]t is a well-established principle of statutory construction that [t]he common law . . . ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose.'" Potter v. Wash. State Patrol, 165 Wn.2d 67, 76-77, 196 P.3d 691 (2008) (alterations in original) (internal quotation marks omitted) (quoting Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Va., 464 U.S. 30, 35-36, 104 S. Ct. 304, 78 L. Ed. 2d 29 (1983)). "Absent an indication that the Legislature intended to overrule the common law, new legislation will be presumed to be consistent with prior judicial decisions." In re Marriage of Williams, 115 Wn.2d 202, 208, 796 P.2d 421 (1990).

A statutory deed of trust is a form of mortgage, in which land is conveyed by a borrower (grantor) to a trustee, who holds title in trust for a lender (beneficiary), as security for credit or a loan the lender has given the borrower. Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012). If the

- 5 -

borrower defaults on repaying the underlying obligation, the trustee may foreclose the deed of trust and sell the property without judicial supervision. Bain, 175 Wn.2d at 93. After selling the property, the trustee must apply the proceeds of the sale first to the expense of the sale and second to the obligation secured by the deed of trust. RCW 61.24.080(1), (2); Bert Kuty Revocable Living Trust ex rel. Nakano v. Mullen, 175 Wn. App. 292, 305, 306 P.3d 994 (2013). If any proceeds remain after the debt owed to the senior lienholder is satisfied, the trustee must deposit the surplus with the clerk of the superior court of the county in which the sale occurred and file a notice of deposit. RCW 61.24.080(3); Mullen, 175 Wn. App. at 305.

In the event of a surplus, the priority of competing creditors' rights is determined by the order in which the creditors' liens attached to the property. RCW 61.24.080(3). Although a foreclosure sale eliminates the *security* of a junior lienholder, the debts and obligations owed to the junior lienholder are not affected. Beal Bank, SSB v. Sarich, 161 Wn.2d 544, 548, 167 P.3d 555 (2007). Accordingly, a junior lienholder maintains priority over the borrower to any surplus proceeds. In re Tr.'s Sale of Prop. of Giannusa, 169 Wn. App. 904, 907-10, 282 P.3d 122 (2012); Upton, 102 Wn. App. at 224-25. This is true even if the borrower had a homestead interest in the property. Upton, 102 Wn. App. at 224-25.

After Alan executed the deed of trust securing the second position loan, BofA recorded its security interest in the Property. Ordinarily, under the deed of trust act, this would make BofA a junior lienholder with priority over the borrower

to surplus proceeds from a nonjudicial foreclosure sale. However, according to the Estate, the deed was void as a matter of law, as a consequence of Dorathy's missing signature. Therefore, the Estate asserts, BofA did not have a valid security interest in the Property and, consequently, did not have priority over the Estate to the surplus proceeds from the foreclosure sale.

The Estate's position is based on its reading of two statutory provisions: RCW 26.16.030 and RCW 6.13.060. It argues that these provisions—by their plain language—render void as a matter of law any unilateral sale, conveyance, or encumbrance of community real property. BofA, on the other hand, maintains that these provisions—as interpreted by Washington courts—merely allow for a nonjoining spouse or domestic partner to avoid, at his or her election, a unilateral sale, conveyance, or encumbrance of community real property.

RCW 26.16.030 shields a nonjoining spouse or domestic partner from improvident, unilateral transfers or encumbrances of community real property.

> Either spouse or either domestic partner, acting alone, may manage and control community property, with a like power of disposition as the acting spouse or domestic partner has over his or her separate property, except:
>
> . . . .
>
> (3) Neither person shall sell, convey, or encumber the community real property without the other spouse or other domestic partner joining in the execution of the deed or other instrument by which the real estate is sold, conveyed, or encumbered, and such deed or other instrument must be acknowledged by both spouses of both domestic partners.

RCW 26.16.030.

Similarly, RCW 6.13.060 shields a nonjoining spouse or domestic partner from improvident, unilateral transfers or encumbrances of a homestead.

The homestead of a spouse or domestic partner cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both spouses or both domestic partners, except that either spouse or both or either domestic partner or both jointly may make and execute powers of attorney for the conveyance or encumbrance of the homestead.

RCW 6.13.060.

Taken together, RCW 26.16.030 and RCW 6.13.060 provide members of a marital community or domestic partnership with protection against unilateral sale, conveyance, or encumbrance of community real property, including homesteads.

The Washington Supreme Court has recognized this protection. However, it has refused to treat the protection as self-executing. Instead, it has held that a unilateral sale, conveyance, or encumbrance is merely *voidable* and, even then, only at the election of the nonjoining spouse or partner. Sander v. Wells, 71 Wn.2d 25, 28, 426 P.2d 481 (1967); Tombari v. Griepp, 55 Wn.2d 771, 774-75, 350 P.2d 452 (1960); Bakke v. Columbia Valley Lumber Co., 49 Wn.2d 165, 170, 298 P.2d 849 (1956); Stabbert v. Atlas Imperial Diesel Engine Co., 39 Wn.2d 789, 792, 238 P.2d 1212 (1951). Having held that such a unilateral agreement was merely voidable, the court concluded that, if the nonjoining spouse or partner does not elect to avoid the agreement, then the agreement will "'impose[] on the parties the same obligations as if it were not voidable.'" Stabbert, 39 Wn.2d at 792 (quoting 1 S. Williston, Contracts § 15, at 22 (rev. ed.)).

The Estate does not assert, and the record does not suggest, that Dorathy exercised her power to avoid the deed of trust securing the second position loan.

- 8 -

Instead, the Estate contends, the deed was void as a matter of law, as a consequence of Dorathy's missing signature. This contention is directly at variance with applicable Supreme Court precedent. Nevertheless, the Estate argues that the aforementioned decisions are no longer binding, as a result of subsequent revision by the legislature of RCW 26.16.030. The Estate's position makes necessary an inquiry into whether the legislature, in amending RCW 26.16.030, intended to overrule the Supreme Court decisions discussed herein.

The referenced decisions interpreted an earlier iteration of RCW 26.16.030 that, by its terms, prevented a husband from selling, conveying, or encumbering community real property without the assent of his wife.

> The husband has the management and control of the community real property, but he shall not sell, convey, or encumber the community real estate, unless the wife join with him in executing the deed or other instrument of conveyance by which the real estate is sold; conveyed, or encumbered, and such deed or other instrument of conveyance must be acknowledged by him and his wife.

REM. REV. STAT. § 6893.

In 1972, the legislature overhauled the community property statute, including the above-quoted provision. LAWS OF 1972, ch. 108. In doing so, it did away with antiquated notions of spousal inequality, including the rule that only a husband had the right to manage and control community real property. LAWS OF 1972, ch. 108, § 3. Because both spouses were given equal right to manage and control community real property, the legislature required that any sale, conveyance, or encumbrance of community real property be acknowledged by both spouses.

> Neither spouse shall sell, convey, or encumber the community real property without the other spouse joining in the execution of the deed or other instrument by which the real estate is sold, conveyed, or encumbered, and such deed or other instrument must be acknowledged by both spouses.

LAWS OF 1972, ch. 108, § 3 (3).

As a result of this amendment, the nonjoining spouse, whether wife or husband, was given "the power to disaffirm the transaction where that spouse has not joined in its execution." Taylor Distrib. Co. v. Haines, 31 Wn. App. 360, 363, 641 P.2d 1204 (1982).

In 2008, RCW 26.16.030 was again amended. LAWS of 2008, ch. 6. This revision was part of a sweeping effort to reflect, throughout the revised code, Washington's recognition of the "expanding rights and responsibilities of all couples recognized as domestic partners." LAWS OF 2008, ch. 6.

> Either spouse or either domestic partner, acting alone, may manage and control community property, with a like power of disposition as the acting spouse or domestic partner has over his or her separate property, except:
>
> . . . .
>
> (3) Neither person shall sell, convey, or encumber the community real property without the other spouse or other domestic partner joining in the execution of the deed or other instrument by which the real estate is sold, conveyed, or encumbered, and such deed or other instrument must be acknowledged by both spouses of both domestic partners.

LAWS OF 2008, ch. 6, § 604.

Contrary to the Estate's position, these amendments do not evince an intent of the legislature to overrule Stabbert and its progeny. The 1972 amendment embraced the protection against unilateral agreements afforded to wives and extended it to protect both wives and husbands. The 2008

- 10 -

amendment extended the protection further still to domestic partners. When the sequence of this statutory provision is considered, there is no indication that the legislature, which is presumed to be aware of its past legislation and judicial interpretations thereof, intended to deviate from the common law.

The Estate fails to argue persuasively to the contrary. Rather than directing our attention to evidence of an intent by the legislature to deviate from the common law, it merely assumes that RCW 26.16.030, once it was amended, superseded all earlier judicial construction. The Estate's assumption is foreclosed by settled principles of construction. Williams, 115 Wn.2d at 208.

The power of avoidance was held by Dorathy. It was not attached to the Property and, thus, did not pass along with the Property to Alan, who, in any event, would not have been able to assert her right "as a sword to defeat satisfaction of a debt" that he himself had incurred. Taylor, 31 Wn. App. at 365; cf. Snohomish County v. Hawkins, 121 Wn. App. 505, 512, 89 P.3d 713 (2004) ("Homestead laws are meant to protect one's home from creditors; they do not protect a spouse who has conveyed her rights to another." (footnote omitted)). For the same reasons, Alan's estate cannot posthumously rescind the deed on Dorathy's behalf.

A voidable agreement imposes the same obligations as if it were not voidable where the party in possession of the power of avoidance does not elect to avoid the agreement. Stabbert, 39 Wn.2d at 792. Dorathy did not elect to avoid the deed of trust securing the second position loan. She is now dead and will never do so. Hence, BofA, as a junior lienholder, has priority over the Estate

No. 71458-9-I/12

to the surplus proceeds. The trial court did not err in ordering disbursal of these proceeds to BofA.

Affirmed.

We concur:

- 12 -